NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1358
_____

In re:  GARY BERNHARD

GARY BERNHARD,
                              Appellant

v.

BRIAN KULL; THERESA B. KULL; PAUL A. BUCCO, Esq.;
NATHANIEL J. FLANDREAU, Esq.; JOHN J. DORSEY, Esq.;
DAVID S. MAKARA, Esq.; DAVIS, BUCCO & ARDIZZI

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-00854)
District Judge:  Honorable Juan R. Sanchez

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 31, 2023

Before:  JORDAN, ROTH., and AMBRO, *Circuit Judges*

(Filed: February 1, 2024)
_____

OPINION*
_____

_____

  * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

The Bankruptcy Court entered a discharge order in Gary Bernhard's 2011 Chapter 7 bankruptcy proceeding, which made Bernard no longer liable for his debt to Brian and Theresa Kull. The Bankruptcy Court ruled that the Kulls violated the order when they attempted to collect on their loans, but the Court did not hold the Kulls in contempt. The District Court affirmed. Bernhard now appeals, arguing that the Kulls and their attorneys did not have an objectively reasonable basis for concluding that their collection efforts might be lawful under the discharge order.

## I.    BACKGROUND[1]

Bernhard was an owner of GB Excavating ("GBE"). In 2008, GBE experienced financial difficulties, causing Bernhard to approach his long-time friend, Brian Kull, for a loan. Kull made two loans to Bernhard from an account he held jointly with his wife, Theresa: a loan for $10,000 in 2008, and another for $50,000 in 2009. Two months after the second loan, Bernhard signed a promissory note ("Note 1"), payable to Brian for $60,000, plus interest. An appraisal for twelve pieces of equipment was attached to the note, with two items – a CAT Crawler and a Bomag Roller – circled to indicate that those items were to be considered security for repayment. Over a period of five months in 2009, Bernhard or GBE paid $3,500 on the note.

---

[1] We have looked to the Findings of Fact outlined in the Bankruptcy Court's Opinion, as adopted by the District Court, and verified through our and the District Court's review of the record.

In early 2011, Bernhard told Brian Kull that he was considering filing for bankruptcy. When Kull asked whether the debt to him would be included in the proceeding, Bernhard said, "no." (App. at 29.) In March 2011, GBE ceased operations. Two months later, it sold the Bomag Roller for $16,000, with none of the proceeds going to the Kulls.

In July 2011, Bernhard initiated a Chapter 7 bankruptcy proceeding in the Eastern District of Pennsylvania. In his petition, he listed both personal and GBE debts. Bernhard did not list Note 1, nor did he inform the Trustee or his attorney of the debt. He did not inform the Kulls of the bankruptcy filing. They did not learn of the bankruptcy until December 15, 2011, after the deadline to file an objection or complaint concerning Note 1's dischargeability.

In February 2012, Bernhard signed a second promissory note ("Note 2") with the Kulls for $63,800. Note 2 covered the unpaid principal amount of the 2008 and 2009 loans, plus accrued interest.[2] Bernhard also redrafted his will to include Brian. For the next six years, Bernhard made small, intermittent payments to the Kulls, totaling $11,177.66.

After seven years, Bernhard still had not repaid the loan. In February 2019, the Kulls, through their attorneys, the Davis Bucco Appellees,[3] sued Bernhard in the Court of

---

[2] Neither Note 1 nor Note 2 had agreed upon payment schedules or a due date for full repayment.

[3] For convenience, we will refer to all Appellees other than the Kulls – the Davis, Bucco & Ardizzi law firm, Paul A. Bucco, Nathaniel J. Flandreau, John J. Dorsey, and

3

Common Pleas of Montgomery County, alleging unjust enrichment and breach of contract based on Note 2. Bernhard argued in response that the debt had been discharged by his 2011 bankruptcy proceeding. The Montgomery County Court disagreed and overruled his objections. Bernhard tried to remove the case to the District Court, but the matter was remanded for lack of jurisdiction. Bernhard then initiated an adversary proceeding in the Bankruptcy Court, alleging that the Kulls and their attorneys were in contempt of the December 15, 2011 Discharge Order. He asked for an order requiring the Appellees to cease all collection efforts and pay his attorney's fees.

After a trial, the Bankruptcy Court held that the Kulls' debt was covered by the discharge order and that their attempts to collect on the debt violated the order, but the Court declined to hold the Appellees in contempt and to award attorney's fees. Bernhard appealed the Bankruptcy Court's contempt ruling and the denial of his request for attorney's fees. The District Court affirmed. This timely appeal followed.

David S. Makara – as the "Davis Bucco Appellees."

## II.    DISCUSSION[4]

The only issue before us relates to the Bankruptcy Court's denial of Bernhard's contempt motion.[5]  In *Taggart v. Lorenzen*, the Supreme Court said that a bankruptcy court may hold a creditor in contempt when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  139 S. Ct. 1795, 1801 (2019).  By holding that the Kulls and the Davis Bucco Appellees were not in contempt, the Bankruptcy Court found that they had an objectively reasonable basis to think that their collection efforts did not violate the discharge order.  Bernhard contests that application of *Taggart* to the facts of this case.

A discharge in a bankruptcy proceeding "operates as an injunction against the commencement or continuation of an action … to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"  11 U.S.C. § 524(a)(2).  To implement or enforce discharge injunctions, bankruptcy courts

---

[4] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334.  The District Court had jurisdiction under 28 U.S.C. § 158(a).  We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.  The District Court sat as an appellate court when reviewing the Bankruptcy Court's order, so "we review the Bankruptcy Court's legal determinations *de novo* and review its factual determinations for clear error."  *In re Bocchino*, 794 F.3d 376, 379-80 (3d Cir. 2015).  "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts."  *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999) (citation omitted).

[5] While, at times, Bernhard disputes the Bankruptcy Court's factual findings, as well as legal determinations made by the District Court and Bankruptcy Court, the sole issue argued on appeal is whether the District Court misapplied the test set forth in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

turn to § 105 of the Bankruptcy Code, which enables them to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," and to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules[.]" § 105(a). "[T]he weight of circuit authority" holds that "§ 105(a) does not authorize separate lawsuits as a remedy for bankruptcy violations[.]" *In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005); *see also In re Cont'l Airlines*, 203 F.3d 203, 211 (3d. Cir. 2000) ("[S]ection 105(a) has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." (internal quotation marks omitted)). So, the remedy for a violation of discharge order is a civil contempt order. *Cf. Taggart*, 139 S. Ct. at 1801 (sections 524(a)(2) and 105(a) "authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order"); *see also* 4 *Collier on Bankruptcy* ¶ 524.02[2][a] (16th ed. 2022) ("Civil contempt, imposed under the court's section 105 powers, is the normal sanction for violations of the discharge injunction.").

A court may impose sanctions for civil contempt when there is clear and convincing evidence that (1) a valid order of the court existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order. *Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir.1994); *see In re Englert*, 495 B.R. 266, 271 (Bankr. W.D. Pa. 2013) ("[T]he debtors received a discharge, the defendant was aware of the discharge and th[e] collection efforts were nevertheless continued."). As noted earlier, the Supreme Court has specified in *Taggart* that a creditor may be held in contempt

6

"when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  139 S. Ct. at 1801.  Only when "there *is no fair ground of doubt* as to whether the order barred the creditor's conduct" is a contempt holding warranted.  *Id.* at 1799.

Bernhard argues that the Bankruptcy Court "wrongfully concluded" under *Taggart* that the Appellees had an objectively reasonable basis for concluding that their conduct was lawful, and that the District Court "affirmed [the Bankruptcy Court] without addressing the issues concerning … mis-application of law."  (Opening Br. at 1, 7.)  But his arguments are unavailing.

The Bankruptcy Court made sixty-five factual findings in its well-considered opinion, and Bernhard contests none of them.  (App. 25-34.)  He merely argues that the Bankruptcy Court should have considered other facts more heavily when applying *Taggart* and thus "mis-applied" the law.  (Opening Br. at 4.)  He ignores the Bankruptcy Court's finding that his own "actions undoubtedly … misled the Kulls into the erroneous, but reasonable belief, that their debt had been excluded from [his] bankruptcy and had not been discharged.  In so doing, Bernhard himself created fair grounds to doubt that the discharge order barred" the Appellees' conduct.  (App. at 13.)

We agree.  Bernhard's own actions "obscured the applicability of the discharge order to the debt owed to the Kulls."  (App. at 52.)  Because there was fair ground to doubt whether the Kulls and the Davis Bucco Appellees' actions were barred by the

7

discharge order, Bernhard's effort to add contempt sanctions to the disappointment and loss he has already heaped on his one-time friends and their attorneys fails.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's affirmance of the Bankruptcy Court's judgment.